UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HAYWOOD,

Plaintiff,

v.

PETER WATSON,

Defendant.
_______________________________/

Case No. 2:23-cv-12099
District Judge Brandy R. McMillion
Magistrate Judge Kimberly G. Altman

# REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 53)[1]

## I. Introduction

This is a prisoner civil rights case. Plaintiff James Haywood, proceeding *pro se*,[2] filed a complaint against Nurse Practitioner Peter Watson alleging that Watson was deliberately indifferent to his serious medical needs while incarcerated at Parnall Correctional Facility (SMT). *See* ECF No. 1. Under 28 U.S.C. §

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[2] Haywood received limited representation from the Federal Pro Se Legal Assistance Clinic for purposes of assisting him in adjourning his deposition and extending discovery deadlines, and assisting him with discovery. (ECF No. 48). The Clinic's limited representation was later terminated, with Haywood continuing to proceed *pro se*. (ECF No. 52).

636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 17).

Before the Court is Watson's motion for summary judgment. (ECF No. 53). Haywood has filed a response. (ECF No. 65). Watson has not filed a reply and the time for doing so has passed. For the reasons discussed below, the undersigned RECOMMENDS that Watson's motion be GRANTED. If this recommendation is adopted, the case will be closed.

## II. Background[3]

The undersigned previously summarized the allegations of the complaint as follows:

> Haywood alleges that on June 27, 2022, he injured his wrist after his hand and wrist were crushed by two metal tables while working in the chow hall. (ECF No. 1, PageID.6). He saw Watson on or around June 28, 2022, and Watson evaluated Haywood's wrist and ordered an x-ray, which revealed "no broken bones but possible fracture." (*Id.*, PageID.7). Haywood was provided with an ace bandage and a half splint. (*Id.*).
>
> On July 25, 2022, Haywood again saw Watson for his pain and a second x-ray was ordered, which did not show an injury. (*Id.*, PageID.8). Nevertheless, Watson recommended an MRI. (*Id.*). On August 19, 2022, Haywood was sent to an offsite doctor who ordered an MRI and Ibuprofen. (*Id.*).

---

[3] On March 15, 2024, Watson filed a motion to dismiss, or alternatively, for summary judgment on the basis of exhaustion. (ECF No. 15). In a Report and Recommendation, the undersigned recommended denying the motion, and this recommendation was adopted by the district judge on November 6, 2024. (ECF Nos. 29, 32). Haywood has also filed several motions to appoint counsel, all of which have been denied. (ECF Nos. 10, 38, 62).

> On September 7, 2022, Watson examined Haywood and ordered a third x-ray. At this time, Watson told Haywood that his prior x-rays *did* show something wrong with Haywood's wrist. (*Id.*). From then on, Haywood was not provided any treatment for his wrist beyond Motrin and Tylenol, despite sending over seventy-four medical kites in support of his claims. (*Id.*, PageID.9). Haywood says that his broken bone required a cast but instead was "left to heal on its own improperly." (*Id.*).

(ECF No. 29, PageID.247-248).

On summary judgment, Watson argues that he was not deliberately indifferent to Haywood's medical needs. In support, Watson has attached Haywood's medical records (ECF No. 53-1), a declaration (ECF No. 53-2), and excerpts from Haywood's deposition (ECF No. 53-3).

According to Haywood's medical records, on June 27, 2022, Haywood was working in the kitchen when another inmate was moving a large cart and smashed his left hand. (ECF No. 53-1, PageID.464). Jesse Szczak, RN saw Haywood after the incident and noted that there was "a very slight amount of edema to the left wrist but the rest of the assessment is unremarkable. [A]ll symptoms are subjective and include pain and inability to move hand/wrist. [P]ain meds were given and supplied and inmate scheduled to see provider tomorrow for possible XR." (*Id.*).

The next morning, Watson saw and treated Haywood. (*Id.*, PageID.466). On examination, he noted that there was swelling, ecchymosis, and tenderness, but

that otherwise Haywood's hand was normal with a normal range of motion. (*Id.*). Watson prescribed ibuprofen 400 mg to be taken twice a day for 30 days and ordered an x-ray at Duane Waters Hospital, with the emergency room "to perform a wet read today." (*Id.*, PageID.467). The request for the x-ray was for pain "at radial styloid, base of thumb, 1st and 2nd MC region of hand." (*Id.*).

The same day, at Duane Waters Hospital, Haywood saw Melva Welcott, NP who noted that

> Pt. was seen this morning by NP Watson and evaluated for left hand injury. Pt arrives to DWH UC for left hand x-ray follow up. Pt. has considerable pain/edema left second MCPJ and tenderness left scaphoid/radial styloid process. Three views of left hand preliminary report-Grossly negative for fracture or dislocation…NP Watson notified by phone of these findings. Volar OCL splint applied left wrist/hand per medic. + CMS post application…Ice detail given.

(*Id.*, PageID.472). The splint placed on Haywood's hand was a "4 inch OCL splint with 4 inch ace bandage." (*Id.*, PageID.471).

The next day, on June 29, 2022, a radiologist reviewed Haywood's x-rays and noted that there was no evidence of dislocation, but that there was a "possible nondisplaced fracture of the radial styloid process. Recommend clinical correlation for point tenderness in this region." (*Id.*, PageID.468). The report recommended that if Haywood had persistent pain, "a follow-up radiographic evaluation in 10-14 days, MRI, or three phase bone scan would be recommended to exclude an occult fracture." (*Id.*).

On June 30, 2022, Plaintiff was seen by RN Szczak for continued pain near his left thumb. (*Id.*, PageID.475). Szczak's note reads:

> Provider Watson requested 5 days of ultram for inmate for left hand injury. RN assessed left hand and found perfusion to be wnl, good cap refill <3sec, and hand to be warm. [T]he splint and ace wrap was reapplied with less tension and inmate was escorted back to kitchen by RN.

(*Id.*). Szczak advised Haywood to kite as needed and provided a medical detail for an ice pack from June 30 to July 2, 2022. (*Id.*, PageID.477).

Haywood did not visit healthcare again until July 24, 2022, at which time Corey Huff, RN noted that Haywood complained of "shooting pain that [he could] hardly tolerate" in his left hand. (*Id.*, PageID.484). He said that the pain started at his thumb and shot up his wrist. (*Id.*). RN Huff noted that there was mild swelling but no deformity present. (*Id.*). He gave Haywood Tylenol 975mg for the pain, rewrapped his wrist, and notified the provider. (*Id.*).

The next morning, on July 25, 2022, Watson saw Haywood and noted that he presented with "pain in the left radial styloid region. Patient [is] wearing splint left hand/wrist with ACE wrapping. Patient reports left wrist continue to hurt, not feeling better than when injury first occurred." (*Id.*, PageID.485). Watson noted that there was "left wrist + tenderness at radial styloid region, 4th, 4th mid MC region" but that he was negative for significant soft tissue swelling and ecchymosis. (*Id.*). His assessment was "[unspecified] fracture of left wrist and

hand." (*Id.*). Watson prescribed 50mg of tramadol and ordered another x-ray to evaluate the status of Haywood's left wrist. (*Id.*, PageID.486-487).

The x-ray report, reviewed on July 27, 2022, found:

> OSSEOUS STRUCTURES: There is no evidence of an acute osseous fracture. Irregularity of the radial styloid, unchanged. No callus formation or reactive change.
>
> JOINTS: Joint spaces are preserved. No subluxation or dislocation. No widening of the scapholunate space.
>
> SOFT TISSUES: No radiographic evidence of soft tissue swelling. No radiopaque foreign body.

(*Id.*, PageID.487). The radiologist again recommended that "[i]f the patient has persistent pain, a follow-up radiographic evaluation in 10-14 days, MRI, or three phase bone scan would be recommended to exclude an occult fracture." (*Id.*).

Watson also submitted a 407 request for orthopedic consultation for Haywood's left wrist injury on July 25, 2026, stating:

> X-rays were performed on 6-28-22 at DWH, results included; Possible nondisplaced fracture of the radial styloid process. Recommend clinical correlation for point tenderness in this region. Following x-rays, pt. was sent to DWH ER, pt. placed into wrist splint/ACE bandage.
>
> Pt. seen today, 7-25-22, pt. reports left wrist hurts as much, at times more than at time of initial injury. Pt. sent for repeat x-rays today, 7-25-22 at DWH. PE shows tenderness over left radial styloid, mid 4th, 5th metacarpals. (-) ecchymosis, (-) for demonstrable deformations.

(*Id.*, PageID.490). On July 29, 2022, Watson resubmitted the 407 request for orthopedic consultation for evaluation of the wrist splinting of Haywood's injured left wrist. (*Id.*, PageID.492).

On August 15, 2022, Watson noted that an appointment was made for Haywood to see a medical provider to assess his wrist on August 19, 2022. (*Id.*, PageID.493). On August 17, 2022, Haywood submitted a kite saying "This is a follow-up 6/28/22 left wrist. The pain is all day every day the left wrist is swole (sic) bruised can't move up or down with out pain (10) I need to see a real doctor. M.R.I./bone scan is recommended. This is my second kite to you 8/8/22/8/17/22." (*Id.*, PageID.494). Christina Vandenberg, RN responded, saying, "As I told you when I saw you in chow hall and you asked on 8/16/22, there are no kites regarding this issue on record; the last 3 dating back to July were all dental. And as I also told you, your upcoming provider appt was already scheduled." (*Id.*).

On August 18, 2022, Connie Whipple, a medical reviewer, approved Watson's request for an orthopedic consultation, noting that the follow-up x-ray of the wrist did not demonstrate fracture. (*Id.*, PageID.495). On August 19, 2022, Haywood was seen at SMT by Trinh Le, MD. (*Id.*, PageID.497). Dr. Le noted that Haywood "has pain. No numbness or tingling. He has 2 XRs of left wrist show no fracture. Patient still complain of pain and popping sensation at the wrist. Patient has been placed in a spint (sic) since." (*Id.*). On examination, the left wrist

was symmetrical to the right wrist and there was no swelling or redness, but he was tender to the snuff box and had limited extension and 45 degrees flexion. (*Id.*, PageID.498). Dr. Le requested an MRI of the left wrist, prescribed ibuprofen as needed for pain, and ordered a chart review following the MRI. (*Id.*). On September 6, 2022, Dr. Le noted that the MRI of the left wrist was approved and ordered another chart review. (*Id.*, PageID.502).

On September 8, 2022, RN Szczak saw Haywood again for wrist pain. (*Id.*, PageID.504). Szczak noted that his left wrist did not seem abnormal with the exception of some muscle atrophy and subjective complaints, and that the majority of the visit was focused on Haywood's mental and emotional wellbeing. (*Id.*). Szczak noted that to alleviate immediate physical symptoms, "RN contacted NP McComb at DWH and received orders for Toradol 30mg IM, Clonidine 0.1mg po, and Vistaril 25mg po." (*Id.*). That day, Dr. Le performed a chart review for renewal of Haywood's ibuprofen. (*Id.*, PageID.509).

On September 9, 2022, Watson saw Haywood on request for an unscheduled visit for his continuing left wrist pain. (*Id.*, PageID.512). Watson noted that Haywood was placed into a wrist splint when the injury first occurred to immobilize wrist movement and that he continued to wear the splint, but that he also continued to work daily in the kitchen. (*Id.*). On examination, Watson noted that there was tenderness, decreased range of active motion, and decreased range

of passive motion, but that he was negative for ecchymosis. (*Id.*, PageID.513). Watson documented that he submitted a request for more Ultram (tramadol), that Haywood was awaiting approval of an MRI for the left wrist but that he would submit a request for another x-ray while awaiting the MRI, and that he submitted another 407 request for an orthopedic consultation. He recommended following up in one week to reevaluate the pain. (*Id.*, PageID.514). The medication request was approved the same day. (*Id.*, PageID.516). Kim Coburn, RN noted that she gave ultram to Haywood that day per Watson's orders, that the orders were also given to the med room nurses, and that Haywood was instructed to report to the med window three times per day as needed. (*Id.*).

On September 13, 2022, MDOC reviewer Whipple noted that the 407 request for an orthopedic consultation was accepted and that it would be resubmitted after the MRI imaging returned findings of the left wrist. (*Id.*, PageID.517). On September 14, 2022, the third x-ray of Haywood's wrist showed no evidence of an acute fracture and it was recommended that Haywood have an MRI. (*Id.*, PageID.520).

On September 20, 2022, Haywood kited the nursing staff saying that he was waiting on his MRI and was still in a lot of pain. (*Id.*, PageID.522). RN Vandenburg responded,

> You have been approved for both an MRI and after for an orthopedic consultation, neither of which do we have any control over their

> scheduling. You also have a chart review scheduled with the doctor in May to follow up on the MRI results, so hopefully that means she anticipates you being scheduled for that prior to her appt.

(*Id.*). On September 22, 2022, Watson performed a chart review to document the findings of the third x-ray and noted that there was no fracture or other changes on the x-ray and that Haywood was awaiting an approved MRI. (*Id.*, PageID.523). That month, Watson was transferred to another MDOC facility and was no longer assigned as Haywood's provider at Parnall. (ECF No. 53-2, PageID.606). Watson was not involved with Haywood's care from September 23, 2022, to December 22, 2022. (ECF No. 53-1, PageID.523-566). On November 10, 2022, Haywood's MRI results showed no fracture, but showed "probable intrasubstance tear of the left abductor pollicis with associated tenosynovitis," and "mild left extensor pollicis brevis tendinosis and tenosynovitis." (*Id.*, PageID.547-548).

On December 19, 2022, Haywood submitted a kite requesting to see Watson, saying that "Only NP Watson can answer my questions. NP Watson can examine my injury fractured wrist/torn tendon left base thumb with answers to treatment. Nurse staff is not understanding my extreme unberable (sic) pain suffering for 5 1/2 months untreated unresolved injury." (*Id.*, PageID.564). Tammie Gibson, RN responded that Haywood had "an appointment already scheduled with the Medical Provider." (*Id.*). On December 21, 2022, Haywood submitted another kite asking how long he would have to wait to see Watson, and

RN Coburn responded that "[n]ursing does not determine when an inmate is seen by a provider…You have a[n] appointment already scheduled this month with the MP to discuss your concerns. (*Id.*).

On December 22, 2022, after Haywood submitted two kites requesting to see him, Watson went to SMT to see Haywood. (*Id.*, PageID.566; ECF No. 53-2, PageID.612). Watson assessed Haywood's left wrist and thumb pain and noted that his grip strength in his left thumb was 0/5, he had decreased range of motion, and pain upon palpation to anatomic snuff box region of the left thumb. (*Id.*, PageID.566). Watson ordered Naproxen 375mg for pain and obtained approval for Ultram 50mg and Neurontin 300mg. (*Id.*, PageID.567-568). Watson then was not involved in Haywood's medical care until March 2023.

On January 8, 2023, Haywood sent a kite saying "I need to see NP provider mr watson immediately you nurse don't understand my pain nor my injury please don't take this personally. I mean know disrespect. mr Watson knows my injury and perheps can help me. (*Id.*, PageID.570) (sic throughout). RN Huff responded that "NP Watson is not currently working at Parnall," but that he would send a chart review to Haywood's medical provider. (*Id.*). On January 10, 2023, Haywood was seen by an orthopedist at Henry Ford Allegiance Hand Orthopaedics, who assessed a "closed nondisplaced fracture of the scaphoid of left

wrist with routine healing" based on their review of the imaging and examination. (*Id.*, PageID.573).

After January 10, 2023, there is a gap in the medical records that does not resume until November 10, 2023, although in his motion Watson continues to reference the medical records from that time period. *See* ECF No. 53, PageID.444-449; ECF No. 53-1, PageID.571-575. In Watson's declaration, he explains he was not involved with Haywood's care from January to March 2023, and that the next time he was involved was on April 9, 2023, when he entered a chart review note that Haywood's follow-up orthopedic consult was scheduled and that his hand pain would be addressed at this appointment. (ECF No. 53-2, PageID.613). He entered another chart review note on April 13, 2023, stating that Haywood's Neurontin prescription would be determined after the upcoming appointment. (*Id.*). After Haywood had his orthopedic consultation, Watson entered another chart review note on April 18, 2023, reflecting that he had reviewed the orthopedic records and would see that Haywood's Neurontin was discontinued. (*Id.*, PageID.614). On April 20, 2023, he says he entered a chart review note that he planned to see Haywood at SMT, and on May 2, 2023, he saw Haywood and attempted to assist in his treatment. (*Id.*). On that date, Watson assessed that Haywood's hand was improving and submitted an order and request for physical therapy evaluation of left wrist pain, which he says was approved on May 17, 2023. (*Id.*, PageID.615).

Watson again explains that he had completely transitioned from his position at SMT in September 2022, and that he expected the appropriate staff to schedule and provide care in accordance with his orders after that. (*Id.*, PageID.616).

Haywood continued to see other providers for his pain after November 2023, with Dr. Le noting on September 27, 2024, that Haywood's pain was resolved after a stellate ganglion injection. (ECF No. 53-1, PageID.603). Haywood was paroled from the MDOC on March 18, 2025.

## III. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citation omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may

"consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Haywood is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (citation modified).

## IV. Discussion

### A. Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v.*

*McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

The objective component requires that “the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm.” *Farmer*, 511 U.S. at 834. To do so, “the plaintiff must allege that the medical need at issue is ‘sufficiently serious.’” *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834). “A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor’s attention.” *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

Under the subjective component, “the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.” *Comstock*, 273 F.3d at 703.

B. Analysis

Watson argues that Haywood cannot meet either element for a claim of deliberate indifference. (ECF No. 53, PageID.451). The undersigned agrees.

For the objective element, Watson does not argue whether Haywood’s wrist injury was a serious medical need but instead argues that he provided care for Haywood based on his medical judgment. (*Id.*, PageID.453). Indeed, Haywood’s

medical records show that the day after Haywood injured his wrist, on June 28, 2022, Watson prescribed ibuprofen and ordered an x-ray, which was performed the same day. The initial read of the x-ray was negative for fracture or dislocation, and after a radiologist reviewed the x-rays the next day, there was no evidence of dislocation but it was noted that there was a possible nondisplaced fracture of the radial styloid process. The radiologist recommended a follow-up x-ray, MRI, or bone scan if the pain persisted after 10 to 14 days. Haywood was also provided with a splint for his wrist. Watson then prescribed 5 days of Ultram for Haywood's pain, and an RN provided him an ice pack detail.

After Haywood complained of pain on July 24, 2022, Watson saw him the next day, noting that he was still wearing his splint with ACE wrapping but that his pain persisted, and he ordered additional tramadol and another x-ray to evaluate Haywood's wrist. The x-ray again came back with no evidence of fracture but showed irregularity of the radial styloid that was unchanged from the prior x-ray, and the radiologist again recommended a follow-up x-ray, MRI, or bone scan if the pain persisted after another 10-14 days. At that time, Watson also submitted a 407 request for an orthopedic consultation. Between that and his next visit with Watson, Haywood saw Dr. Le, who requested an MRI and prescribed additional ibuprofen. On September 9, 2022, while Haywood was still awaiting an MRI and orthopedic consultation, he saw Watson for an unplanned visit, and Watson

submitted a request for more Ultram, a request for another x-ray while Haywood awaited the MRI, and another 407 request for an orthopedic consultation. The x-ray again showed no evidence of acute fracture, and it was again recommended that Haywood have an MRI. On September 22, 2022, Watson performed a chart review to document the findings of the third x-ray and noted that there was no fracture or other changes on the x-ray and that Haywood was awaiting an approved MRI. At that point, Watson was transferred to another facility and no was longer in charge of Haywood's medical care, although at Haywood's request, Watson returned on two occasions to see him. Haywood ultimately had his MRI on November 10, 2022, and his orthopedic consultation on January 10, 2023. After December 2022, because Haywood repeatedly requested that he be able to see Watson over any of the other providers, Watson did chart reviews to document the findings of each of these and to monitor Haywood's progress, and during his second visit with Haywood after his transfer, he ordered physical therapy. Overall, Watson continued to monitor Haywood's records even though he had been transferred to a different facility and even though Haywood continued to receive care from other providers and nurses at SMT.

Further, in his declaration, Watson explains that "[i]n my medical experience, it may also take a while for any patient, in the MDOC or outside of the MDOC, to obtain or be scheduled for an MRI." (ECF No. 53-2, PageID.610). He

also says that he "had no involvement in any alleged delays in obtaining an MRI or orthopedic consult," and "[b]y the time [he] completely transitioned from Parnall in September 2022, Mr. Haywood had received three x-rays negative for fracture, and multiple requests for orthopedic consults were submitted, and he was approved and waiting for his MRI appointment." (*Id.*, PageID.616). He says that "as a medical provider in the MDOC, including at Parnall, [he] was not responsible for the scheduling of any patient's…offsite appointments, including but not limited to, MRI appointments and orthopedic consultations." (*Id.*).

Because Haywood's claim "challenges the adequacy of this undisputed care, he must show that the doctors provided grossly incompetent treatment." *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). However, in total, Watson provided medication for Haywood's pain, ordered three x-rays to monitor his wrist, and ordered orthopedic consultations to provide an alternate treatment plan after Haywood continued to have pain. As Watson stated in his declaration, any delay in receiving the MRI and orthopedic consultations were out of his hands, especially considering that he transferred to another facility in September 2022.

Haywood has provided no evidence to suggest that this course of treatment was grossly inadequate, and with the medical record provided, reasonable minds could not conclude that the treatment Watson provided was grossly inadequate or incompetent. Ultimately, Haywood's claim amounts to a disagreement over

medical treatment, which "implicate[s] medical judgments and not the Eighth Amendment." *Hale v. Corr. Med. Servs., Inc.*, No. 1:10-CV-1008, 2012 WL 4382361, at *9 (W.D. Mich. Aug. 21, 2012), *report and recommendation adopted*, 2012 WL 4381917 (W.D. Mich. Sept. 25, 2012); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Because Watson used his medical judgment to treat Haywood's injury adequately, Haywood cannot meet the objective element for a claim of deliberate indifference.

As for the subjective element, Haywood would have to show that Watson "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. Haywood has not done so. He alleged in his complaint that Watson did not diagnose or treat his injury, leaving his wrist untreated for several months. However, it is clear from the medical record that Haywood saw Watson the day after his injury, provided him treatment, and continued to see him and formulate additional treatment plans over the next several months as Haywood's pain persisted. Haywood has provided no evidence that Watson perceived a substantial risk to his health and then ignored it; instead, the

evidence establishes that Watson continually updated Haywood's treatment plan in an attempt to address his ongoing pain, up until and even *after* Watson was transferred to a different facility. Haywood's first x-ray showed a possible nondisplaced fracture and the radiologist recommended following up with an additional x-ray if the pain persisted, which Watson did. When the x-rays continually were inconclusive or showed no evidence of fracture, Watson ordered an orthopedic consultation for Haywood, and another provider ordered an MRI for him. Ultimately, it was the orthopedic doctor who, upon reviewing Haywood's examinations and MRI results, discovered that there was likely a small hidden scaphoid fracture.

On this record, no reasonable mind could conclude that Watson disregarded a risk to Haywood's health. Instead, he used his medical judgment to provide treatment based on the facts in front of him and when Haywood continued to experience pain, he requested an orthopedic consultation, which ultimately discovered the likely source of Haywood's pain. Haywood even testified at his deposition that Watson was "a pretty good guy, he just made a mistake." (ECF No. 53-3, PageID.646). On these facts, Haywood is unable to show a genuine dispute regarding the subjective element of a deliberate indifference claim. As such, Watson is entitled to summary judgment.

## V. Conclusion

For the reasons discussed above, the undersigned RECOMMENDS that Watson's motion for summary judgment (ECF No. 53) be GRANTED. If this recommendation is adopted, the case will be closed.

Dated: July 21, 2026
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2026.

s/Dru Jennings
DRU JENNINGS
Case Manager